# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* M.M.

No. 18-0022 (Kanawha County 17-JA-118)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner S.R., the child's maternal grandmother and temporary legal guardian, by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's December 8, 2017, order terminating her guardianship rights to M.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Bryan B. Escue, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her guardianship rights based upon insufficient evidence and without granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant abuse and neglect proceedings, petitioner, the child's maternal grandmother, filed for guardianship of the child in the Family Court of Kanawha County due to the mother's substance abuse.[2] Although the record is unclear as to what unfolded during the family court proceedings, it appears that petitioner was granted temporary legal guardianship. However, the family court subsequently entered an "Order of Removal of Infant Guardianship Case to Circuit Court" in February of 2017, finding that the child was not properly cared for and was in danger in petitioner's home. Upon investigating the family court's concerns, the DHHR filed an abuse and neglect petition against petitioner and the parents in March of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The record indicates that the mother and the child lived with petitioner in her home for most of the four-year-old child's life. While it appears that the mother and the child moved out of petitioner's home at some point, the mother often left the child in petitioner's care due to the mother's instability and substance abuse.

2017. The DHHR alleged that the mother had a substance abuse problem and was then incarcerated due to having been arrested for selling heroin out of petitioner's home. Petitioner and the mother engaged in domestic violence and petitioner once called law enforcement when the mother brandished a knife and threatened to kill her. In addition, Child Protective Services ("CPS") received multiple referrals regarding petitioner's substance abuse in the home with the child present. Petitioner called 9-1-1 in November of 2016, alleging that she was having chest pains after taking methamphetamine. She tested positive for the same in the family court in December of 2016. Moreover, the evidence revealed that petitioner was previously the subject of numerous CPS referrals with her own children, who had been removed from her care on at least one occasion due to substance abuse. Finally, the DHHR alleged that petitioner acted irrationally; sent multiple text messages threatening court personnel; failed to provide the child with the necessary food, clothing, supervision, and housing; and was not sufficiently motivated or organized to provide for the needs of the child on an ongoing basis. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2017, during which petitioner admitted that she tested positive for methamphetamine while the child was in her care but testified that she did not have a substance abuse problem, stating "I had a few slips. That doesn't mean I relapsed." Her testimony also revealed that she tested positive for alcohol several times in June of 2017. Regarding prior CPS intervention with her own children, petitioner denied that her children had ever been removed from her care due to substance abuse. She stated "[p]eople would call [CPS] on me just because they didn't like me." However, she admitted that she entered a rehabilitation program approximately ten years prior, when her own children were in her custody due to substance abuse. A CPS worker testified that the family court referred the instant case due to substance abuse issues, an unstable home, and contact with a volatile mother. Further, the CPS worker testified that petitioner denied her substance abuse issues and failed to take responsibility for her actions. After hearing evidence, the circuit court adjudicated petitioner as an abusing guardian and held her motion for increased visitation in abeyance until the child could see a therapist.

Petitioner underwent a psychological evaluation in August of 2017. The evaluator opined that petitioner attempted to portray herself in a negative or pathological manner in particular areas and presented certain patterns that are common among individuals feigning mental disorder. The evaluator also stated that there was significant concern regarding minimization and denial of substance abuse problems. Petitioner's prognosis for attainment of minimally adequate parenting within the timeframe of the case was assessed to be poor due to her minimization of substance abuse, persistent poor judgment in interpersonal relationships, and "apparent personality involvement in the referral concerns." The evaluator provided several recommendations but opined that they were unlikely to facilitate minimally adequate parenting within the timeframe of the case.

In September of 2017, the circuit court held a dispositional hearing wherein the guardian moved the circuit court to terminate petitioner's visitation with the child, as she had fallen asleep during one visit, and expressed concern that petitioner was abusing drugs despite providing negative drug screens. The guardian also proffered that the child exhibited negative behavior after his visits with petitioner. The circuit court granted the guardian's motion, ordered petitioner

to participate in parenting classes and submit to a drug screen before leaving the courthouse, and continued the hearing.

The circuit court reconvened the dispositional hearing in November of 2017. The circuit court was advised that petitioner failed to submit to a drug screen after leaving the prior hearing. The DHHR presented the testimony of a CPS worker, who testified that the DHHR recommended termination of petitioner's guardianship rights. Petitioner's adult daughter, the aunt of the child at issue, testified that petitioner is "very unstable" and that she does not allow her to visit her children for that reason. Petitioner's daughter testified that they "had CPS cases against us and [petitioner] overdosed multiple times and was forced to go into rehab and signed her rights over to my grandmother. This is a long, [ongoing] history for [petitioner]." When asked whether she believed petitioner could care for another child, her daughter responded "No. Absolutely not." Petitioner testified and moved the circuit court for an improvement period, which was denied. The circuit court found that petitioner had a substance abuse issue that prevented her from being an appropriate guardian, that she could not provide a safe and stable home for the child, and that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future as she had not made sufficient efforts to rectify said conditions. Finding that termination was in the child's best interest, the circuit court terminated petitioner's guardianship rights in its December 8, 2017, order. It is from the dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her guardianship rights upon insufficient evidence when it ignored the facts that she essentially raised the child from birth, had been drug-free for nearly ten years prior to December of 2016, and tested negative for controlled substances throughout the instant proceedings. As such, petitioner argues

---

[3]In addition to petitioner's guardianship rights, the parents' parental rights were terminated below. The permanency plan for the child is to be adopted by a relative.

the circuit court erred in terminating her guardianship rights without first granting her an improvement period, as she was prevented from correcting any alleged deficiencies in her parenting. We find petitioner's argument to be without merit. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. The evidence established that petitioner refused to acknowledge that she had a significant substance abuse problem, dating back over a decade. Despite being forced to go into rehabilitation and having her own children removed from her care due to substance abuse, petitioner abused methamphetamine nearly a decade later while the child now at issue was under her guardianship. Petitioner's assertions that she was drug-free prior to December of 2016 are disingenuous in light of evidence which shows she called 9-1-1 in November of 2016 after admittedly abusing methamphetamine. Despite these facts, petitioner testified at her adjudicatory hearing that she did not have a substance abuse problem. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640 (2004)). The record demonstrates that petitioner failed to acknowledge her substance abuse issues or that her behavior negatively affected the child, thus rendering an improvement period an exercise in futility. Accordingly, we find no error in the circuit court's decision to deny her an improvement period.

We also find no error in the circuit court's decision to terminate petitioner's guardianship rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical,

4

mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The evidence overwhelmingly demonstrates that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future. Contrary to petitioner's assertions that she had an "unblemished parental pre-petition past," the record indicates that petitioner was the subject of numerous CPS petitions, with her own children and the child at issue, due to substance abuse. Petitioner filed for guardianship of the child in the family court yet tested positive for methamphetamine on at least two occasions, tested positive for alcohol, and engaged in domestic violence with the mother throughout those proceedings. After the case was removed to the circuit court, petitioner continued to test positive for alcohol, once left the courthouse without providing a drug screen, and failed to acknowledge her significant substance abuse problem. In fact, the psychological evaluation report indicated that petitioner's prognosis for minimally adequate parenting during the timeframe of the case was "poor" due, in part, to her minimization of her drug abuse. While the report listed several recommendations, the evaluator opined that none were likely to succeed. Moreover, testimony established that petitioner was unstable, fell asleep during a visit, and negatively impacted the child's behavior. Accordingly, the circuit court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the child's welfare. As previously mentioned, circuit courts are to terminate parental, custodial, and guardianship rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 8, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker